IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Elie Villanueva,<br><br>        Petitioner,<br><br>v.<br><br>JT Shartle,<br><br>        Respondent. | No. CV-15-00494-TUC-RCC (BPV)<br><br>**REPORT & RECOMMENDATION** |

      Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 (Doc. 1). Respondent has filed a Return and Answer (Doc. 13) and Petitioner has filed a Traverse (Doc. 14). Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. For the following reasons, the Magistrate Judge recommends that the District Court deny the Petition.

**I.**     **BACKGROUND**

      Petitioner is an inmate currently incarcerated at the United States Penitentiary in Tucson, Arizona. (Petition at 1; *see also* Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus ("Petitioner's Memorandum") (Doc. 1-2)). Petitioner is serving a 33–month sentence of imprisonment followed by fifteen years of supervised release for conviction in the Middle District of North Carolina ("North Carolina district court") of failure to register as a sex offender in violation of 18 U.S.C. §2250. (Answer at 5 & Exh. A, Att. 11). Respondent contends that Petitioner's projected release date is December 22, 2016 via good conduct time. (Answer at 2 (citing Answer,

1 Exh. A, Att. 1)).

2 Petitioner asserts that the Bureau of Prisons ("BOP") has miscalculated his sentence, resulting in his imprisonment beyond his actual release date. (Petition at 4). Respondent argues that Petitioner failed to exhaust administrative remedies in part and that Petition is without merit because Petitioner's sentence has been properly calculated.

**II.   DISCUSSION**

   **A.   JURISDICTION**

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,'... and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir.2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *overruled in part on other grounds by City of Littleton, Colo. v. Z.J. Gifts D–4*, L.L.C., 541 U.S. 774 (2004)). Generally, an action to contest the legality of a sentence must be filed pursuant to 28 U.S.C. § 2255; whereas, an action to challenge the execution of a sentence must be filed pursuant to 28 U.S.C. § 2241. *Hernandez*, 204 F.3d at 864. Petitioner's claim that the BOP has miscalculated his sentence is properly raised pursuant to §2241. *See id.* Further, because Petitioner is incarcerated at the United States Penitentiary in Tucson, Arizona, this Court has jurisdiction over this matter. *Francis v. Rison,* 894 F.2d 353 (9th Cir. 1990).

   **B.   EXHAUSTION**

Petitioner's briefs are not a model of clarity. He advances several calculations that he contends should be applied in his case. One set of calculations is based on his contention that he is entitled to credit dating back to a July 12, 2013 offense date, or at least to January 11, 2014 when he contends his state custody ended. (*See* Petitioner's Memorandum). He also argues that he should receive prior custody credit, and/or "*Willis*" time, for the period from June 22, 2014 to August 1, 2015. (Petition at 4; Traverse at 2; *see also* Petitioner's Memorandum, Exhs. F, G).

Federal prisoners are generally required to exhaust available administrative

remedies before filing a habeas corpus petition pursuant to 28 U.S.C. § 2241. *See Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir.1991); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986). The failure to satisfy the exhaustion requirement applicable to section 2241 proceedings is not jurisdictional. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990) *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55 (1995). Thus, where a federal prisoner fails to properly exhaust administrative remedies prior to filing a § 2241 petition, "the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." *Id.* The district court may exercise its discretion to excuse the exhaustion requirement if the administrative remedy is inadequate, ineffective, or if attempting to exhaust would be futile or cause irreparable injury. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993); *United Farm Workers of America v. Arizona Agr. Emp't. Relations Bd.,* 669 F.2d 1249, 1253 (9th Cir. 1983). When determining if the exhaustion requirement should be excused, the court should consider whether: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct is own mistakes and to preclude the need for judicial review. *Noreiga–Lopez v. Ashcroft*, 335 F.3d 874, 880–81 (9th Cir. 2003) (citing *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)); *see also Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983) (recognizing that requiring exhaustion of administrative remedies "will aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.").

The BOP has established an Administrative Remedy Program which requires the prisoner to proceed through a four-tier review process comprised of: (1) an informal

resolution process with institutional staff, see 28 C.F.R. § 542.13; (2) a formal written Administrative Remedy Request to the warden, see 28 C.F.R. § 542.14; (3) an appeal to the BOP Regional Director, see 28 C.F.R. § 542.15; and (4) an appeal to the BOP General Counsel, *see id*. ("Appeal to the General Counsel is the final administrative appeal."). Additionally, formal administrative remedy requests regarding initial decisions that did not originate with the Warden, or his/her staff, may be initially filed with the Bureau office which made the original decision, and appealed directly to the General Counsel. 28 C.F.R. § 542.14(d)(5). The regulation is clear that "[t]he purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a).

Respondent argues that Petitioner failed to exhaust administrative remedies prior to filing the instant Petition because, during the administrative remedy process, Petitioner "only presented his claim that he should be given credit from June 22, 2014, forward—not his current claim that he should be given 491 days [sic] credit—to the Warden and Regional." (Answer at 6 (citing Petitioner's Memorandum at 21-26)). Elsewhere in the Answer, Respondent mentions that after Petitioner's requests for administrative remedies seeking credit for time beginning June 22, 2014 were denied at the institutional and Regional Office levels, his Central Office appeal was rejected because he failed to provide a copy of the Regional Appeal and, although he was given leave to resubmit his appeal within fifteen days of the rejection, he did not do so. (Answer at 3 (citing Answer, Att. A at ¶10)). However, Respondent specifically seeks dismissal of the Petition only on the ground that Petitioner did not exhaust his claims seeking credit from a date prior to June 22, 2014. (*See* Answer at 6-7). With regard to that claim, Respondent also points out that Petitioner's proffered calculation is mistaken because Petitioner failed to take into account that his full-term expiration date was adjusted to reflect time while he was on fugitive status prior to commencing his term of conditional release. (*Id.* at 3-4 (citing Answer, Exh. A, Att. 4)).

Petitioner initially argued in his opening Memorandum that the Court should not

- 4 -

1    require exhaustion because doing so would delay matters beyond his release date should
2    he prevail. (Petitioner's Memorandum at 6-8). Petitioner also asserted, and Respondents
3    have not disputed, that in October 2015, he "presented the situation to Ms. Lora Molinar,
4    the supervisor of the inmate systems records office, and she advised Petitioner the
5    determination as reflected on [the September 17, 2015 Sentence Monitoring Computation
6    Data form attached as exhibit L to Petitioner's Memorandum] . . . was the final decision
7    of the Designation and Sentence Computation Center in Grand Pra[i]rie, Texas, leaving
8    no other alternative but to proceed with this. . ." action. (*Id.* at 7-8). With regard to his
9    claim seeking credit from January 11, 2014 or before, Petitioner also stated that under his
10   present timeline, there is no time to exhaust administrative remedies. (*Id*).

11   However, in his Traverse, Petitioner stated that: "The issue before this honorable
12   Court now is one of prior custody jail credit. Specifically, between the dates of June 22,
13   2014 and August the 1st, 2014 totaling 40 days not including any applicable Good
14   Conduct time ('GCT'), that [P]etitioner is entitled to as 'Willis Time Credits.'" (Traverse
15   at 2). Thus, Petitioner appears to have abandoned his claims with regard to calculations
16   based on the January 2014 and July 2013 dates.[1]

17   What is left then is Petitioner's claim that he is entitled to credit for the period
18   from June 22, 2014 through August 1, 2014. With regard to this claim, Petitioner
19   contends that "he did in fact resubmit his appeal. Petitioner presented his appeal to
20   correctional officer K. Lagro to be mailed. Petitioner can only assume [sic] left the
21   facility as intended." (Traverse at 4). Respondent has not specifically argued that this
22   claim should be dismissed for failure to exhaust. *See e.g. Soules v. McClintock,* 2014 WL
23   4425786, *3 (D.Ariz. Sept. 9, 2014) (Respondent waived argument that Petitioner did not

---

[1] Even if Petitioner had not withdrawn these claims, the record is clear that he failed to exhaust them, and Petitioner concedes as much. (*See* Petitioner's Memorandum at 6-8). Additionally, Petitioner has failed to rebut Respondent's argument and supporting evidence that adjustment for time on fugitive status supported a different termination date for his state sentence and that he was not entitled to prior custody credit under 18 U.S.C. §3585(b). Therefore, even if the Court were to address Petitioner's unexhausted claims relying on the July 2013 and January 2014 dates, they are without merit.

exhaust administrative remedies). Nor has Respondent sought leave to dispute Petitioner's claim that he did re-submit the appeal. Further, Respondent has not disputed Petitioner's assertion that there would be insufficient time to exhaust administrative remedies without effectively mooting this action. As discussed *infra,* Respondent has submitted pertinent records and argument to support his position that Petitioner's claim is meritless. Upon review of Respondent's Answer, there is no possibility that the relief applied for may be granted at the administrative level. Under the instant circumstances, the Court will review the merits of Petitioner's claim that he should receive prior custody credit for the period from June 22, 2014 to August 1, 2014. *See Fraley*, 1 F.3d at 925. See also *Parsons v. Sanders*, 2010 WL 5676523, *1 (D. Ariz. Dec. 20, 2010) (court need not address exhaustion where claim is without merit); *cf. Cassett v. Stewart,* 406 F.3d 614, (9th Cir. 2005) (in the context of a habeas petition filed pursuant to 28 U.S.C. § 2254, the court may deny the petition on the merits without reaching the exhaustion question "when it is perfectly clear that the applicant does not raise even a colorable federal claim.") (citing 28 U.S.C. § 2254(b)(2); *Granberry v. Greer,* 481 U.S. 129, 135 (1987)).

## C. PETITIONER'S CLAIM

### 1. INTRODUCTION

Petitioner's case involves the interplay of a sentence imposed by the state of Minnesota in 2006 with his federal sentence imposed by the North Carolina district court in 2014.

On April 13, 2006, Petitioner was sentenced in Minnesota state court to a 48-month term of imprisonment and a 10-year term of conditional release based upon his conviction of third degree criminal sexual conduct and attempted third degree criminal sexual conduct. (Answer at 3 (citing Answer, Exh. A, Att. 3)). Petitioner received 181 days of jail credit. (*Id.*).[2]

---

[2] Respondent explains, and Petitioner does not dispute, that Petitioner's full term date was April 12, 2010. (Answer at 3). "Absent the 181 days jail credit, Petitioner would have been released to supervised release (not conditional release) on December 12, 2008. (Under Minnesota law, inmates are required to serve the balance of their full term on supervised release. Minn. Stat. [§] 244.05)." (Answer at 3 (citing Answer, Exh. A,

- 6 -

In light of the 181 days of jail credit, Petitioner was initially released on June 14, 2008. (Answer at 3 (citing Answer, Exh. A, Att. 4)). "Had Petitioner complied with the terms of his supervised release, the 181 days of jail credit would have been subtracted from his April 12, 2010, full term date, and he would have started conditional release on October 13, 2009." (*Id.*). However, Petitioner absconded from supervision several times. His expiration date was adjusted for 108 days for his March 12, 2009 to June 28 2009 violation, and 6 days for his January 8, 2010 to January 14, 2010 violation. (*Id.* at 3-4 (citing Answer, Exh. A, Att. 4)). His adjusted expiration date was February 4, 2010. (*Id.* at 4 (citing Answer, Exh. A, Att. 4)). Petitioner then began serving his ten-year conditional supervision sentence on February 5, 2010. (*Id.*).

While serving his conditional release time, Petitioner was on fugitive status from November 21, 2012 to July 12, 2013. (*Id.* (citing Answer, Exh. A, Att. 4)). The Minnesota Department of Corrections ("MNDOC") credited Petitioner with the 353 days he spent on successful supervision during the base term and docked the 233 days he spent on fugitive status. (*Id.*). After his July 12, 2013 arrest, Petitioner was incarcerated by the MNDOC. (*See* Traverse, Exh. C; Petitioner's Memorandum, Exh. G). On August 12, 2013, the MNDOC Hearings and Release Unit revoked Petitioner's release and assigned 365 days, stating in pertinent part that: "Re-release is also contingent upon an agent-approved plan."[3] (Traverse, Exh. C).

On September 19, 2014, while imprisoned in Minnesota, Petitioner successfully moved the Minnesota state court to reduce his ten-year conditional release term to a five-year conditional release term. (Answer at 4; *see also* Answer, Exh. A, Atts. 5-6 (modification was in order because the wrong version of the sentencing statute had been

---

Att. 4 )).

[3] Petitioner submits a Minnesota statute which provides, in pertinent part, that: "If the offender fails to meet any condition of release, the commissioner may revoke the offender's conditional release and order that the offender serve the remaining portion of the conditional release term in prison. The commissioner shall not dismiss the offender from supervision before the conditional release term expires." (Petitioner's Memorandum, Exh. A (Minn. Stat. §609.109 subd. 7(b) (2004)).

- 7 -

applied to Petitioner's state case)). The state court order modifying Petitioner's conditional release term to five years was filed on October 16, 2014. (Answer, Exh. A, Att. 6).

As to Petitioner's federal sentence, Petitioner was indicted on August 26, 2013, in the North Carolina district court on charges of failure to register and update registration as a sex offender in violation of 18 U.S.C. § 2250. (Answer, Exh. A, Att. 7). On August 28, 2013, the North Carolina district court issued an arrest warrant for Petitioner.[4] (Answer, Exh. A, Att. 8). On November 6, 2013, the North Carolina district court issued a federal Writ of Habeas Corpus Ad Prosequendum to borrow Petitioner from state custody to be prosecuted on the pending federal charges. (Answer at 5 (citing Answer, Exh. A, Att. 9); *see also* Petitioner's Memorandum, Exh. G ("On November 6, 2013, while in primary custody of the . . . MNDOC . . ., you were released to the United States Marshals (USM) via writ of habeas corpus ad prosequendum.")). On August 1, 2014, Petitioner was sentenced on the federal charges to a 33-month term of imprisonment and fifteen years of supervision for failure to register as a sex offender. (*Id.*; *see also* Answer, Exh. A, Att. 11). Petitioner was "returned to the custody of MNDOC authorities to complete [his] state sentence." (Petitioner's Memorandum, Exh. G).

On October 17, 2016, the day after the state court modified Petitioner's conditional release term to five years, "the MNDOC determined that Petitioner's five year conditional release term expired on October 7, 2014, and Petitioner transferred into primary federal custody." (Answer at 5 (citing Answer, Exh. A, Att. 4)).

On August 25, 2015, the North Carolina district court amended its judgment to reflect that Petitioner's 33-month term of imprisonment "shall run concurrently with any undischarged sentence the defendant is presently serving effective August 1, 2014, Nunc Pro Tunc." (Answer, Exh. A, Att. 12 at 2). Petitioner is currently serving that term.

Respondent does not dispute that in a September 17, 2015 sentence computation,

---

[4] The Indictment reflects that Petitioner violated 18 U.S.C. § 2250 "[f]rom on or about June 12, 2013, continuing up to and including on or about July 12, 2013, the exact dates to the Grand Jurors unknown. . . ." (Answer, Exh. A, Att. 7).

- 8 -

the BOP credited Petitioner with 31 days of jail credit from his arrest on July 12, 2013 to August 11, 2013. (Answer at 5 n. 2). Respondent asserts that the calculation was erroneous "because the BOP was not aware that the MNDOC had credited [Petitioner] with that time. . . . Since . . . the MNDOC did credit Petitioner with that time, the BOP has recalculated his sentence computation to remove that credit." (*Id.* (citing Answer, Att. A ¶8)).

**2. ANALYSIS**

At issue is whether Petitioner is entitled to prior custody credit against his federal sentence for the period from June 22, 2014 to August 1, 2014.

"After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a)); see also *Allen v. Crabtree,* 153 F.3d 1030, 1033 (9th Cir. 1998). The statute governing calculation of a term of imprisonment provides that a federal sentence commences on the date the defendant is received in custody to begin service of his sentence. 18 U.S.C. § 3585(a). Section 3585 also provides for credit for prior custody as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> that has not been credited against another sentence.

18 U.S.C. § 3585(b). Section 3585(b) does not authorize a district court to compute the credit at sentencing. *Wilson,* 503 U.S. at 334–35; *United States v. Lualemaga*, 280 F.3d 1260, 1265 (9th Cir. 2002). Instead, the Attorney General, acting through the BOP, has the responsibility to compute the credit allowed by section 3585(b). *Wilson*, 503 U.S. at 334–35 ("Because the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Attorney General has no choice but to make the determination as an administrative matter

when imprisoning the defendant."); *see also United States v. Pardue*, 363 F.3d 695, 699 (8th Cir. 2004) (calculation of pre-sentence credit to be accorded a defendant on sentence for violating supervised release is for the BOP, not the district court, and once administrative remedies have been exhausted defendant may seek judicial review of the BOP's calculation); *United States v. McGee*, 60 F.3d 1266, 1273. (7th Cir. 1995) (same). The BOP has "developed detailed procedures and guidelines for determining the credit available to prisoners." *Wilson,* 503 U.S. at 335; *see also Mezheritsky v. Duncan*, 2010 WL 3834657, *4 (D. Ariz. May 25, 2010) (acknowledging same); *Cruz v. Sanders*, 2008 WL 5101021, *1 (C.D. Cal. Dec. 2, 2008) ("The BOP's guidelines for computation of sentences are set forth in Program Statement 5880.28, which expressly incorporates the provisions of 18 U.S.C. § 3585(b)."); (Answer, Exh. A, ¶¶4-5 (citing Program Statement 5880.28)).

Under federal law, a federal sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). In cases like Petitioner's, where state and federal sentences are involved, courts consider whether the state or federal government had "primary jurisdiction" over the defendant when he is "received" by the Attorney General for service of his sentence. *See e.g. Taylor v. Reno,* 164 F.3d 440, 444 (9th Cir. 1998). Primary jurisdiction determines the priority of custody and service of sentence as between state and federal sovereigns. *Id.* at n.1 ("A lack of 'primary jurisdiction' does not mean that a sovereign does not have jurisdiction over a defendant. It simply means that the sovereign lacks priority of jurisdiction for purposes of trial, sentencing and incarceration." (citation omitted)). "As a general rule, the first sovereign to arrest a defendant has priority of jurisdiction for trial, sentencing and incarceration." *Thomas v. Brewer,* 923 F.3d 1361, 1365 (9th Cir. 1991) (citation omitted). Moreover, a transfer pursuant to a writ of habeas corpus ad prosequendum does not relinquish primary jurisdiction. *Id.* at 1366-67. Therefore, when Petitioner was transferred from the

Minnesota prison to North Carolina for federal proceedings pursuant to a writ of habeas corpus ad prosequendum, he was "considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over [him] . . . continues uninterruptedly." *Id.* at 1367 (internal quotation marks and citation omitted).

Petitioner argues that time from June 22, 2014 to August 1, 2014 should be credited against his federal sentence as prior custody credit. Respondent counters that §3585 prohibits awarding credit against Petitioner's federal sentence for that time because the same time was already credited against Petitioner's state sentence.

To support his position, Petitioner cites a document captioned: MNDOC Prison Obligations indicating a "Max Confinement Milestone" and "Termination Milestone" of "6/22/14". (Traverse, Exh. A). The document also reflects that Petitioner's next reclassification date is scheduled for January 1, 2015. (*Id.*). Petitioner also asserts that his "[c]onditional [r]elease term was an administrative probationary term which was punishable by up to the expiration date of the conditional release term. In this case, [P]etitioner was serving only a 365-day probation violation term which began to be counted from the date of arrest[,] July 12, 2013. . . . Petitioner's Revocation term ended on June 22, 2014." (Traverse at 5-6 (citing Traverse, Exhs. A, C)). No explanation of the MNDOC Prison Obligation form or terms used therein is provided. The portion of the MNDOC Hearing Decision submitted by Petitioner indicates revocation of release, assignment of 365 days penalty, and a release expiration date of October 15, 2019.[5] (Traverse, Exh. C). The Hearing Decision also states that any conviction of discipline violations while incarcerated may extend the projected release date and that "[r]e-release is also contingent upon an agent-approved plan." (*Id.*). Additionally, the Minnesota statute cited by Petitioner provides that upon failure to meet "any condition of conditional release, the commissioner may revoke the offender's conditional release and order that

---

[5] The Revocation Hearing Decision was issued before the state court modified Petitioner's term of conditional release from ten to five years. After Petitioner's term of conditional release was modified, MNDOC determined that his term concluded on October 7, 2014. (Answer at 4).

- 11 -

1   the offender serve the remaining portion of the conditional release term in prison.  The
2   commissioner shall not dismiss the offender from supervision before the conditional
3   release term expires." (Petitioner's Memorandum, Exh. A (Minn. Stat. §609.109 subd.
4   7(b) (2004)).  There is simply no basis on which to conclude from the documents cited by
5   Petitioner, or the record as a whole, that Petitioner's state sentence concluded on June 22,
6   2014. Instead, the record reflects that the state of Minnesota credited all of the time
7   Petitioner spent in custody and successful supervision between April 13, 2006 and
8   October 7, 2014 against his state sentence.  (Answer at 4, 10 (citing Answer, Exh. A, att.
9   4 at 1-3); *see also* Answer, Exh. A at ¶¶7, 8).  Consequently, § 3585(b) prohibits
10  crediting the time at issues here as prior custody credit against the federal sentence
11  because the time has already been credited against the Minnesota sentence. *See Wilson,*
12  503 U.S. at 337 ("Congress made clear [in §3585(b)] that a defendant could not receive
13  double credit for his detention time.")).  Because Petitioner has received full credit
14  against his state sentence for the period at issue, he is not entitled to prior custody against
15  his federal sentence for that same period to of time.  18 U.S.C. § 3585(b); *see also*
16  *Wilson,* 503 U.S. at 337; *Boniface v. Carlson,* 856 F.2d 1434, 1436 (9th Cir. 1988)
17  (applying precursor to §3585 and reaching same result).

18          Nor does Petitioner's reference to "*Willis*" time alter the analysis.  Although §
19  3585(b) does not provide for any exceptions, "BOP policy is to award presentence
20  custody credits already credited to a concurrent state sentence in two narrow
21  circumstances where the BOP has determined that the credits will be of 'no benefit' to
22  the federal prisoner. These credits are called *Willis* and *Kayfez* credits and are based on
23  judicially-created exceptions to § 3585(b) set forth in *Kayfez v. Gasele,* 993 F.2d 1288
24  (7th Cir. 1993), and *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971)." *Gravel v. Fox,*
25  2014 WL 4676497, **7-8 (E.D. Cal. 2014) 8  (discussing *Willis* and *Kayfez* in detail and
26  noting that both decisions were not controlling and that the Seventh Circuit subsequently
27  limited *Kayfez* in an unpublished decision); *see also Kayfez,* 993 F.2d 1288 (crediting
28  time against federal sentence where, "there was no longer a state sentence which credited

prior official detention[]" when petitioner was received into federal custody); *Willis,* 438 F.2d 923 (considering whether the defendant had spent time in state custody only because he was subject to a federal detainer); *but see Elwell v. Fisher,* 716 F.3d 477, 485 (8th Cir. 2013) (noting that *Willis* and cases like it were "based on the prior and now-repealed Code section—§ 3568—that permitted the 'double crediting' of pre-trial detention time for state and federal purposes[]", but Congress has since "repealed § 3568 and incorporated it into § 3585(b) with the addition of an express prohibition on double crediting."). BOP awards prior custody credit "for any time spent in non-federal presentence custody that begins on or after the date of the federal offense up to the date that the first sentence begins to run, federal or non-federal." (Answer, Att. A, ¶9); *see also Gravel,* 2014 WL 4676497 at **7-8. In Petitioner's case, the Minnesota state sentence commenced prior to the federal offense and imposition of the federal sentence. Petitioner received credit for the time at issue against his prior state sentence and there is no support in the record for concluding that Minnesota denied Petitioner release based on the federal detainer lodged against him.

Petitioner is also mistaken to the extent that he contends that his federal sentence should commence on his July 12, 2013 arrest date in order to be fully concurrent with his state sentence. The earliest date a federal sentence can commence is the date of its imposition. *See Schleining v. Thomas*, 642 F.3d 1242, 1248 (9th Cir. 2011) ("[defendant's] first and second sentences 'could not be concurrent in the sense of having the same starting date because a federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served.'" (quoting *United States v. Flores*, 616 F.2d 840, 841 (5th Cir.1980)). Thus, "a federal sentence made concurrent with a sentence already being served does not operate in a 'fully concurrent' manner. Rather, the second sentence runs together with *the remainder of* the one then being served." *Shevly v. Whitfield*, 718 F.2d 441, 444 (D.C.Cir. 1983) (emphasis in original) (footnote omitted) (citing *Flores*, 616 F.2d at 841; *Wilson v. Henderson*, 468 F.2d at 584 (5th Cir.1972)).

In August 2015, the North Carolina district court amended its judgment to indicate that the 33-month term of imprisonment was to "run *concurrently* with any undischarged sentence the [Petitioner] is presently serving effective August 1, 2014, Nunc Pro Tunc." (Answer, Exh. A, Att. 12 (emphasis added)). In light of the federal court's amended judgment, BOP has properly computed Petitioner's sentence based on a 33-month term of imprisonment commencing on August 1, 2014. Because, as discussed *supra*, Petitioner is not entitled to prior custody credit under §3585(b), his Petition is without merit.

### III. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, enter an order denying Petitioner's Petition for Writ of Habeas Corpus (Doc. 1).

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within **FOURTEEN (14) DAYS** after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within **FOURTEEN (14) DAYS** after being served with a copy. Fed.R.Civ.P. 72(b)(2). No replies to objections shall be filed unless leave is granted from the District Court to do so. If objections are filed, the parties should use the following case number: **CV 15-494-TUC-RCC**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to review.

Dated this 1st day of November, 2016.

_____
Bernardo P. Velasco
United States Magistrate Judge